## ALLEN, mayor, *et al.* v. POOL.

Under the provisions of the act of August 20, 1906 (Acts 1906, p. 176), establishing the city court of Buford, the solicitor of that court was not entitled to have a mandamus issued against the mayor and members of council of the City of Buford, to compel them to audit his accounts for costs due him in criminal cases in that court which had terminated by acquittal, orders of nolle prosequi, or the sustaining of demurrers, and to order the treasurer of the city to pay the amount thereof; nor to compel the treasurer by writ of mandamus to pay such claims of the solicitor.

Submitted February 14,—Decided July 22, 1908.

Mandamus. Before Judge Brand. Gwinnett superior court. December 12, 1907.

J. V. Pool applied for a writ of mandamus against Allen as mayor of the City of Buford, Bennett and others as members of the city council, and Brogdon as treasurer. The applicant was the solicitor of the city court of Buford. He alleged, that as such he had represented the State, in a number of misdemeanor cases which had been terminated by verdicts of not guilty, or by orders of nolle prosequi, or by the sustaining of demurrers; that he was entitled to costs in such cases; that he had presented his claim to the mayor and council, who refused it; that there were sufficient funds in the hands of the treasurer, arising from fines, forfeitures and convict hire, to pay his claim; and he prayed that the mayor and council be required to audit the account and order the city treasurer to pay it, and that the treasurer be required to pay

such account. Respondents demurred to the application. The demurrer was overruled, and exceptions pendente lite were filed. Answers were filed, raising issues which were submitted to a jury. Upon their finding the mandamus was made absolute. A motion for a new trial was overruled, and the respondents excepted.

*E. O. Dobbs* and *N. L. Hutchins,* for plaintiffs in error.

*I. L. Oakes,* contra.

LUMPKIN, J. (After stating the facts.) The single controlling question in this case is whether, under the act of August 20, 1906 (Acts 1906, p. 176), the duty of auditing and approving the applicant's claim and ordering it to be paid by the treasurer was imposed upon the mayor and members of the city council, and the duty of paying it was imposed upon the treasurer. The city court of Buford appears to have been the subject of much legislation. On December 17, 1901, an act was approved to establish "the city court of Buford, Gwinnett county, Georgia" (Acts 1901, p. 96). On August 1, 1906, an act was approved amending the act of 1901. Nineteen days later, on August 20, 1906, another act was approved, abolishing the court thus established, and repealing the original act and amendment thereto. On the same day an act was approved establishing "the city court of Buford, in the City of Buford, in the County of Gwinnett." Certain provisions in this last act formed the bases of the present controversy. Though ample in extent, covering sixteen pages, the act of 1906, in so far as it refers to the subject under consideration, is not clear. By section seven it was declared, that "For his services in said court the fees of the solicitor shall be as follows: For every case finally disposed of in said court, founded upon accusation, ten dollars ($10.00); for every indictment or special presentment finally disposed of in said court, five dollars ($5.00); for every case for a violation of the gambling laws of the State, finally disposed of, twenty-five dollars ($25.00); and for all services for which this section does not provide, he shall receive the same fees as allowed by law to solicitors-general for similar services in the superior court. The foregoing fees are to be paid out of the fund arising from fines and forfeitures in said court, and the hire of convicts sentenced therein, as hereinafter provided." By section 47 it was enacted that "the mayor and council of the City of Buford shall have power and authority to

hire convicts from said city court under and subject to the laws and regulations governing the hiring out of misdemeanor convicts in this State, and that the money arising from such hire, together with all fees and forfeitures which may be imposed by said court, be paid into the city treasury of said city." By section 48 it was enacted that "all fees and costs imposed by said court, which are paid, shall be collected by the sheriff of said court, and, after paying the several officers of the court their costs in the respective cases, he shall pay over the balance to the treasurer of the City of Buford, and that all money arising from forfeitures and fines and hire of convicts, less costs due to the several officers of the court in the respective cases, shall likewise be paid to the treasurer of the City of Buford." By section 49 it was enacted "that the mayor and council of the City of Buford is hereby authorized and empowered to pay out of the treasury of said city all jury fees and other court expenses, which said fees and expenses said City of Buford shall be liable therefor."

From a reading of the sections of the act above quoted it will be seen that section 7 provided that the fees of the solicitor were to be paid out of the fund arising from fines and forfeitures and the hire of convicts, "as hereinafter provided." The only other sections of the act touching the subject were those numbered 47, 48, and 49, above set out, and to them or some of them only could reference have been made by the expression, "as hereinafter provided." Section 47 declared that the mayor and council should have power to hire the convicts from the city court, and that the money arising therefrom, "together with all fees and forfeitures," should be paid into the city treasury. It is probable that the word "fees" was intended for fines, but it is printed as quoted above. There is nothing in this section which imposes on the mayor and council the duty of auditing the solicitor's account and ordering payment thereof from money in the city treasury; nor on the treasurer to pay such amounts as might be demanded of him by the solicitor. Section 48 provides that all fees and costs imposed by the court (possibly meaning fines and costs), which are paid, shall be collected by the sheriff of the court, and that, after paying the officers of the court their costs in the respective cases, he shall pay over the balance to the treasurer of the City of Buford; and that "all money arising from forfeitures and fines

and hire of convicts, less costs due to the several officers of court in the respective cases, shall likewise be paid to the treasurer of the City of Buford." There is nothing in this which directs payment by the treasurer on account of insolvent costs, or costs in cases of acquittal, after money has been paid into his hands; nor is there any direction to the mayor and council to audit the account and order the treasurer to make such a payment. Treating the printed word "fees" as meaning fines, the sheriff is made the collecting officer of fines and costs, and on him is placed the duty of paying to the several officers of court their costs in the respective cases. The act does not state in terms who shall collect the hire due for convicts; but it seems to contemplate that the costs in the respective cases shall be deducted from "forfeitures and fines and hire of convicts," before the balance shall be paid into the treasury. The only distinct provision in the act for making payment from the city treasury is contained in section 49, which declares that the mayor and council are authorized and empowered to pay out of the treasury "all jury fees and other court expenses, which said fees and expenses said City of Buford shall be liable therefor." Unless the insolvent costs due to the solicitor could be classified as "court expenses," the provision referred to did not authorize payment of them from the treasury. We think it is quite clear that the expenses referred to were the current expenses necessary and proper for the conduct and operation of the court, and incidental thereto; and that they did not include claims of the solicitor for insolvent costs in cases of acquittal. The statement that certain things might be paid from the treasury, after funds had been there received, would rather imply a negation of the payment of other claims, such as those of the solicitor.

Mandamus lies to compel a due performance of an official duty, where there is no other specific remedy. Civil Code, § 4867. There must be a legal duty before its performance can be compelled by mandamus. Here no duty is imposed by the act on the mayor and council to audit and order payment of this claim to be made out of the treasury, nor upon the treasurer to pay it upon the demand of the solicitor. Under the law relating to the superior court, provision is made for examining and allowing claims for insolvent costs, and ordering them to be paid, and for the manner of distribution of fines and forfeitures. Penal Code, §§ 1085, 1097.

There is no provision analogous to this distinctly made in the act of 1906 as to the city court of Buford in regard to convict hire. If such a duty can be implied on the part of any officer before the fund is paid into the treasury, no specific duty of payment by the treasurer to the solicitor can be implied after the fund has reached his hands. See *Patterson* v. *Taylor,* 98 *Ga.* 646 (25 S. E. 771); *Holtzclaw* v. *Riley,* 113 *Ga.* 1023 (39 S. E. 425); *Pulaski County* v. *DeLacy,* 114 *Ga.* 583 (40 S. E. 741); *Sapp* v. *DeLacy,* 127 *Ga.* 659 (56 S. E. 754).

From what has been said it will be seen that the applicant had no right to the writ of mandamus absolute, and its grant was erroneous.

*Judgment reversed. All the Justices concur.*